UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARRY JAMES YBARRA,

        Petitioner,

   v.

C. ARAMANT,

        Respondent.

Case No. 16-cv-05039-EMC

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I.   INTRODUCTION

Larry James Ybarra filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his robbery conviction from Santa Clara County Superior Court. Respondent has filed an answer to the petition. For the reasons discussed below, the petition will be denied.

## II.   BACKGROUND

A.   State Court Proceedings

The California Court of Appeal described the evidence at trial:

> On October 29, 2010, appellant walked into a Safeway store and took a can of beer without paying for it. Loss prevention officers Ernesto Fernandez and Jessica Ramirez were on duty that day in the store; both were in plain clothes. Fernandez saw appellant take the beer, but decided not to stop him. Approximately two hours later, appellant returned to the store and took another beer; he concealed it in his pants and walked out the front door of the store. [Footnote omitted.]
>
> Fernandez stopped appellant outside the store by standing in front of him. Fernandez identified himself as a loss prevention officer and said that he knew appellant had a can of beer in his pants. Appellant pushed his bicycle at Fernandez and then became combative; appellant tried to punch Fernandez. Fernandez testified that he felt he needed to defend himself.

Fernandez blocked appellant's punches and tried to control his movements. They backed up into the street where Fernandez took appellant to the ground. Fernandez tried to handcuff appellant, but appellant fought and kicked. Fernandez and appellant were both on the ground when appellant reached over his head and choked Fernandez with both hands, making it difficult for Fernandez to breathe. Appellant dug his fingernails into Fernandez's neck. Fernandez placed appellant in a "rear naked choke" in order to stop appellant. [Footnote omitted.] Appellant continued to resist. Fernandez applied pressure with the choke hold in an effort to stop appellant from struggling.

Fernandez began bleeding from his neck. At some point he told Ramirez to call the police. A man who was walking by attempted to hold appellant's feet down and someone shouted at appellant to stop resisting. Ramirez tried to help by holding appellant's legs down while he was kicking.

Eventually, appellant stopped resisting. Fernandez handcuffed him and took him into the store. On the way into the loss prevention office, appellant reached around and fidgeted and tried to get away from Fernandez. Appellant began reaching into his pocket. Fernandez told him to take his hand away from his pocket, but appellant managed to get his hand about halfway in before Fernandez removed appellant's hand. Fernandez searched appellant's pocket and found a blade from a utility knife inside.

*People v. Ybarra*, No. H040106, 2015 WL 1952289, at \*1 (Cal. Ct. App. April 30, 2015).

Following the jury trial in Santa Clara County Superior Court, Mr. Ybarra was convicted of second degree robbery. He also admitted that he had sustained five prior strike convictions, had two serious felony prior convictions, and had served a prior prison term. He was sentenced to 15 years in prison. *Id.* at \*2.

Mr. Ybarra appealed. The California Court of Appeal affirmed his conviction and the California Supreme Court denied his petition for review.

Mr. Ybarra then filed this action, seeking a federal writ of habeas corpus. Mr. Ybarra alleges the following claims for relief in his federal petition: (1) the trial court violated his right to due process by failing to instruct the jury that the use of force must be motivated by an intent to steal; (2) the trial court violated his right to due process by giving the prosecutor's proposed instruction regarding the merchant's use of force but rejecting the defense's proposed instruction on the same topic; and (3) the jury instruction on flight violated Petitioner's right to due process because it (a) lightened the prosecutor's burden of proof and (b) clashed with the presumption of innocence and the need to prove his guilt beyond a reasonable doubt.

2

Respondent has filed an answer. Mr. Ybarra has not filed a traverse, and the deadline by which to do so has long passed. The matter is now ready for decision.

## III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Santa Clara County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## IV. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A

federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). "When there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803. The presumption that a later summary denial rests on the same reasoning as the earlier reasoned decision is a rebuttable presumption and can be overcome by strong evidence. *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605-06 (2016). Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default and applies to decisions on the merits. *Barker*, 423 F.3d at 1092 n.3. In other words, when the last reasoned decision is a decision on the merits, the habeas court can look through later summary denials to apply § 2254(d) to the last reasoned decision.

Section 2254(d) generally applies to unexplained as well as reasoned decisions. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). When the state court has denied a federal constitutional claim on the merits without explanation, the federal habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." *Id.* at 102.

## V. DISCUSSION

A. Trial Court's Refusal To Give Pinpoint Jury Instruction On Intent

1. Background

Mr. Ybarra contends that the trial court's refusal to give a pinpoint jury instruction on force used during a robbery violated his right to due process because it "allowed the jury to convict [him] in the absence of proof beyond a reasonable doubt of the force element of the

robbery." Docket No. 1 at 13.

At trial, a critical issue was whether Mr. Ybarra had used force to effectuate a robbery, or to defend himself against an overly zealous security guard, or both. The defense requested an instruction that stated: "The act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal." *Ybarra*, at *2. Defense counsel argued that this pinpoint instruction was necessary to avoid any potential that the jury might convict Mr. Ybarra upon a finding that he used force to resist an assault by security guard Ernesto Fernandez rather than that he used force to permanently deprive the owner of the property. The trial court refused to give the instruction, stating that it did not accurately state the law of robbery and would "tend to confuse the process" by combining the separate concepts of motive and specific intent.[1] RT 255.

---

[1] After the trial court rejected his proposed instruction, defense counsel then suggested that his proposed instruction be modified to state: "the act of force or intimidation by which the taking is accomplished in robbery must be done with specific intent to steal." RT 257. The trial court rejected the modified proposed instruction as being duplicative of CALCRIM 1600, the pattern instruction on robbery. This modified proposed instruction is not further discussed because Mr. Ybarra has not challenged, on appeal or in his habeas petition, the refusal to give his modified proposed instruction.

The CALCRIM 1600 instruction given stated:

The defendant is charged in Count 1 with robbery in violation of Penal Code section 211.

To prove that the defendant is guilty of this crime, the People must prove that:

1. The defendant took property that was not his own;

2. The property was taken from another person's possession and immediate presence;

3. The property was taken against that person's will;

4. The defendant used force or fear to take the property or to prevent the person from resisting;

AND

5. When the defendant used force or fear to take the property, he intended to deprive the owner of it permanently.

The defendant's intent to take the property must have been formed before or during the time he used force or fear. If the defendant did

5

The California Court of Appeal rejected Mr. Ybarra's claims that his proposed instruction was required as a matter of state law and was necessary to avoid a due process violation. That court first discussed the element of force/fear for the crime of robbery and determined that the requested instruction was properly rejected. Under California law, robbery is defined as "the felonious taking of personal property in the possession of another . . . , from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. Under California law, the force had to be used with the intent to steal, but could occur after the initial taking if it was motivated by the intent to retain the property. *See Ybarra,* at *4.

> [R]obbery, like larceny, is a continuing offense; all the elements must be satisfied before the crime is completed but no artificial parsing is required as to the precise moment or order in which the

---

> not form this required intent until after using the force or fear, then he did not commit robbery.
>
> If you find the defendant guilty of robbery, it is robbery of the second degree.
>
> A person takes something when he or she gains possession of it and moves it some distance. The distance moved may be short.
>
> The property taken can be of any value, however slight. Two or more people may possess something at the same time.
>
> A person does not have to actually hold or touch something to possess it. It is enough if the person has (control over it/ or the right to control it), either personally or through another person.
>
> A (store/ or business) (employee/or agent) who is on duty has possession of the (store/ or business) owner's property.
>
> Fear, as used here, means fear of (injury to the person himself or herself, or immediate injury to someone else present during the incident or to that person's property).
>
> Property is within a person's immediate presence if it is sufficiently within his or her physical control that he or she could keep possession of it if not prevented by force or fear.
>
> An act is done against a person's will if that person does not consent to the act. In order to consent, a person must act freely and voluntarily and know the nature of the act.

CT 148-49 (CALCRIM 1600).

elements are satisfied.)  Thus, the use of force or fear to escape or otherwise retain even temporary possession of the property is sufficient for robbery. (*People v. McKinnon* (2011) 52 Cal.4th 610, 686; *People v. Gomez, supra*, 43 Cal.4th at p. 257.)

In essence, appellant's defense was that he was struggling with the loss prevention officer not because he was intending to permanently deprive him of the can of beer, but because "he [was] simply intending to try to protect himself, to try to protect his body[.]"

"A trial court must instruct the jury, even without a request, on all general principles of law that are ' "closely and openly connected to the facts and that are necessary for the jury's understanding of the case." [Citation.]  In addition, "a defendant has a right to an instruction that pinpoints the theory of the defense...." ' [Citation.] The court may, however, 'properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation].' [Citation.]" (*People v. Burney* (2009) 47 Cal.4th 203, 246.)

Even if this court assumed for the sake of argument that defense counsel's proposed instruction correctly stated the law and was not potentially confusing, it was not supported by substantial evidence. The evidence showed that appellant used force or fear when he pushed his bicycle at the loss prevention officer and started trying to punch him just as the loss prevention officer approached and identified himself; at this point the robbery was complete.  It happened before the struggle with the loss prevention officer. Simply put, there was no evidence that at the moment appellant pushed his bicycle toward the loss prevention officer and started swinging his arms at him he was acting in self-defense. Accordingly, since there was no evidence that appellant's use of force or fear was motivated by anything other than his intent to steal, the court was correct in refusing to give defense counsel's proposed special instruction.

*See Ybarra,* at *3-4.  The California Court of Appeal further stated that, because it had found no error in the trial court's refusal to give the proposed instruction, there was no violation of Mr. Ybarra's federal constitutional rights.  *Id.* at *4.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied.  *See Ylst*, 501 U.S. at 803-04; *Barker*, 423 F.3d at 1091-92.  Mr. Ybarra is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

7

2.    <u>Analysis</u>

To obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Federal habeas relief is available for the omission of a jury instruction only if the error "'so infected the entire trial that the resulting conviction violate[d] due process.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see Estelle*, 502 U.S. at 72. Due process does not require that an instruction be given unless the evidence supports it. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982). The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *See Walker v. Endell*, 850 F.2d 470, 475-76 (9th Cir. 1987) (citing *Henderson*, 431 U.S. at 155).

If a constitutional error is found in the omission of an instruction, the federal habeas court also must determine whether that error was harmless by looking at the actual impact of the error. *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998). The habeas court must apply the harmless-error test set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and determine whether the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam) (quoting *Brecht*, 507 U.S. at 623).

Mr. Ybarra fails to show that the California Court of Appeal's rejection of his due process claim was contrary to, or an unreasonable application of, clearly established federal law as set forth by the U.S. Supreme Court.

The state appellate court's determination that, as a matter of state law, there was insufficient evidence to warrant the pinpoint instruction is entitled to a presumption of correctness on federal habeas review. *See Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). Mr. Ybarra has not overcome that presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). He argues that the state appellate court erroneously stated that Mr. Ybarra pushed his bike at Mr. Fernandez (the security guard) because the evidence showed that Mr. Ybarra dropped his bike. The evidence about the bike was conflicting: Mr. Fernandez testified at trial that Mr. Ybarra had pushed the bike at him, and on cross-examination it was shown that Mr. Fernandez had testified at the

preliminary hearing that Mr. Ybarra dropped his bike when Mr. Fernandez stepped in front of him and identified himself. *Compare* RT 110-11 (Mr. Ybarra "pushed his bike toward me and then after that he proceeded to become combative. . . . He started swinging at me" as though trying to punch Mr. Fernandez and made physical contact; after that, Mr. Fernandez grabbed Mr. Ybarra and took him to the ground) *with* RT 156-157 (at preliminary hearing Mr. Fernandez testified that, after he identified himself, Mr. Ybarra "dropped the bike and that's when he began to attack me"). The only other witness who testified about the beginning of the encounter was the other security guard, Jessica Ramirez, and she also testified that it was Mr. Ybarra who first "started getting physical." RT 186; *see also* RT 186-87 ("Mr. Ybarra tried to push Ernesto out of his way" and "pushed him and his shoulder area, chest area."). There was conflicting evidence about the bike, but showing the existence of conflicting evidence does not satisfy Mr. Ybarra's "burden of rebutting the presumption of correctness [of the state court's determination of a factual issue] by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

More importantly, regardless of whether the bike was pushed at Mr. Fernandez or dropped, the evidence was uncontroverted that Mr. Ybarra used another form of force when Mr. Fernandez stepped in front of him. Mr. Fernandez testified that Mr. Ybarra swung his arms at Mr. Fernandez and made contact before Mr. Fernandez attempted to use any force on Mr. Ybarra. *See* RT 111 (Mr. Ybarra "started swinging at me"), RT 157 (at preliminary hearing, Mr. Fernandez had testified that Mr. Ybarra was "flailing his arms"), RT 172 (Mr. Fernandez agrees that the word "flailing" was used by the questioner at the preliminary hearing and was not his word). Mr. Fernandez testified that, after Mr. Ybarra attacked him, he responded with force on Mr. Ybarra (i.e., he grabbed him and took him to the ground) and that Mr. Ybarra forcefully resisted. RT 111. The only other witness who testified about the beginning of the encounter, security guard Ramirez, also testified that it was Mr. Ybarra who first "started getting physical." RT 186; *see also* RT 186-87 ("Mr. Ybarra tried to push Ernesto out of his way" and "pushed him and his shoulder area, chest area.") Mr. Ybarra did not testify. The testimony of the only two other eyewitnesses showed that they came upon a fight already in progress: Jane Mitchell was driving in her car and called 9-1-1 when she came upon "three people wrestling." RT 230; *see also* RT 236-

37 (Ms. Mitchell agrees that, when she first noticed the commotion, they were already in action and that she did not know what precipitated the commotion). Odalis Gomez was walking around a McDonald's restaurant when she "just heard a commotion" and decided to call 9-1-1. RT 240; *see also* RT 243 (agrees that the fight was already going on when she turned to see it), RT 244 (she could not see what was going on between the people on the ground because her view was obstructed by a hedge). There was no evidence that it was Mr. Fernandez who first used force, nor was there any evidence that Mr. Fernandez and Mr. Ybarra began to use force simultaneously. In light of the uncontradicted evidence that Mr. Ybarra first used force (by swinging his arms at Mr. Fernandez and possibly pushing his bike at him), and that Mr. Fernandez's use of force was only in response to that use of force by Mr. Ybarra, the California Court of Appeal reasonably determined (a) that the robbery was complete upon that initial use of force by Mr. Ybarra and (b) that there was not sufficient evidence to support giving a special instruction for situations in which the force may have been used by the defendant for another purpose, such as self-defense.

Although the California Court of Appeal did not discuss any federal cases, its determination that there was not sufficient evidence to support giving the pinpoint instruction was consistent with the Supreme Court's statement that due process does not require that an instruction be given unless the evidence supports it. *See Hopper v. Evans*, 456 U.S. at 611 (although state law precluding lesser-included offense instructions in capital cases had been invalidated in another case, new trial was not warranted for this defendant whose own evidence negated the possibility that an instruction on lesser-included offenses would have been warranted).

The instructions that were given adequately conveyed the relevant principles about robbery and the need for force to be used at a time when there was an intent to steal. The jury was correctly instructed on the elements of robbery, as well as on the prosecution's obligation to prove each element of the crime beyond a reasonable doubt. The jury instructions included the pattern reasonable-doubt instruction, CALCRIM 220, that told the jury the defendant was presumed innocent and that the People had a burden to prove the defendant guilty "beyond a reasonable doubt." CT 146. The pattern instruction on robbery, CALCRIM 1600, informed the jury of the intent element and the force element, and connected the two. As relevant here, the jurors were

instructed that the People had to prove that "[t]he defendant used force or fear to take the property or to prevent the person from resisting" and "[w]hen the defendant used force or fear to take the property, he intended to deprive the owner of it permanently." *See* footnote 2, above. The CALCRIM 1600 instruction also instructed that the "defendant's intent to take the property must have been formed before or during the time he used force or fear." CT 148. Another instruction, CALCRIM 3261, told the jury that a robbery or attempted robbery "continues until the perpetrator has actually reached a temporary place of safety."[2] Yet another instruction, CALCRIM 251, instructed the jury that there had to be a union of the act and wrongful intent, i.e., the "person must not only intentionally commit the prohibited act . . . but must do so with a specific intent" that was described in the robbery instruction.[3] The combined effect of these instructions was to convey to the jury that the force had to be used at the same time the intent existed, and that the intent that had to exist was an intent to steal. The jury is presumed to have followed these instructions. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them").

Following the instructions given, the jury would not have found Mr. Ybarra guilty unless convinced that the prosecution had proven beyond a reasonable doubt that Mr. Ybarra had the intent to steal at the same time he used force on Mr. Fernandez. The absence of the requested pinpoint instruction did not so "'infect[] the entire trial that the resulting conviction violate[d] due process.'" *Henderson*, 431 U.S. at 154. The California Court of Appeal's rejection of Mr.

---

[2] The CALCRIM 3261 instruction given stated: "The crime of robbery or attempted robbery continues until the perpetrator has actually reached a temporary place of safety. [¶] The perpetrator has reached a temporary place of safety if: [¶] He has successfully escaped from the scene; and [¶] He is no longer being chased; and [¶] He has unchallenged possession of the property; and [¶] He is no longer in continuous physical control of the person who is the target of the robbery." CT 151 (CALCRIM 3261).

[3] The CALCRIM 251 instruction stated: "The crime charged and the [lesser included offense] in this case require proof of the union, or joint operation, of act and wrongful intent. [¶] For you to find a person guilty of the crimes, that person must not only intentionally commit the prohibited act or intentionally fail to do the required act, but must do so with a specific intent. The act and the specific intent required are explained in the instruction for that crime or allegation." CT 128 (CALCRIM 251).

Ybarra's due process claim was not contrary to or an unreasonable application of clearly established federal law, as set forth by the U.S. Supreme Court. *Cf. Larsen v. Paramo*, 700 F. App'x 594, 596 (9th Cir. 2017) ("No clearly established federal law, as determined by the Supreme Court, holds that a state court's failure to give a pinpoint jury instruction on the defense theory of the case violates a criminal defendant's due process right to 'be afforded a meaningful opportunity to present a complete defense.'").

Even assuming arguendo that not giving the proposed instruction violated Mr. Ybarra's right to due process, the error would have been harmless. There was no evidence that Mr. Ybarra swung his arms at Mr. Fernandez for any reason other than to effectuate the robbery. The jury was adequately instructed on the elements of robbery, including the need for the intent to steal to be present at the moment the force was used. The prosecutor did not misstate the law. *See, e.g.,* RT 276 (explaining that when there was "force or fear applied either to take the property, to retain the property, or to escape with the property, it escalates a theft into a robbery, and that's what happened in our case"), RT 278 ("if he uses force on an employee of Safeway to keep that beer or to keep them from retaking it or even just to get out of there to escape, he has completed a robbery."). Defense counsel argued that Mr. Ybarra was scared and used force only to protect himself, RT 295-97, but the jury rejected the argument. Lastly, the very brief jury deliberations -- the jury deliberated for just 65 minutes after a six-day trial, CT 118-19 -- suggest the jury did not struggle with this case and weigh in favor of finding that any instructional error was harmless. *See United States v. Lopez*, 500 F.3d 840, 846 (9th Cir. 2007) (quoting *United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001)) ("'Longer jury deliberations weigh against a finding of harmless error because lengthy deliberations suggest a difficult case.'"); *see, e.g., id.* at 846 (2.5-hour jury deliberations in illegal reentry case suggested any error in allowing testimony or commentary on defendant's post-arrest silence was harmless); *Velarde-Gomez*, 269 F.3d at 1036 (4-day jury deliberations supported inference that impermissible evidence affected deliberations). If there was a constitutional error in the trial court's refusal to give the requested pinpoint jury instruction, the error did not have a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623. Mr. Ybarra is not entitled to the writ on this claim.

B.      Jury Instruction Regarding A Merchant's Use of Force

1.      State Court Proceedings

At the request of the prosecutor, the jury instructions included the following instruction:

> A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises. [¶] In making the detention, a merchant may use reasonable amount of nondeadly force necessary to protect himself or herself and to prevent escape of the person detained or the loss of tangible or intangible property.

CT 150. The trial court permitted the instruction to "give the jury more guidance [as to] the rights of a business merchant or agent of a business." RT 262. The trial court added that it was not precluding the defense "from arguing anything about excessive force or anything else like that." RT 263.

Mr. Ybarra contends that this "argumentative pro-prosecution special instruction on [his] and Fernandez's use of force lightened the prosecution's burden of proving the force element beyond a reasonable doubt," especially because the trial court had refused his pinpoint instruction that the "force . . . by which the taking is accomplished in robbery must be motivated by the intent to steal." Docket No. 1 at 19. He cites, without discussion, the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, as well as the case of *Carella v. California*, 491 U.S. 263, 265 (1989). Docket No. 1 at 19.

On appeal, Mr. Ybarra argued the federal constitutional claim and also argued that the instruction violated his rights under state law because it embodied only the prosecution's view of the force element in the crime of robbery. The California Court of Appeal rejected Mr. Ybarra's arguments, although it discussed only the state law issues. The appellate court explained that an instruction is argumentative when it recites facts "in such a manner as to constitute argument to the jury in the guise of a statement of law," or "invite[d] the jury to draw inferences favorable to one of the parties from specified items of evidence." *Ybarra*, at *5 (citations and internal quotation marks omitted). The appellate court noted the general rule against instructions that relate particular facts to a legal issue. *Id.* But the appellate court found that the merchant's-use-

13

of-force instruction had none of these vices.

> Appellant's assertion that the instruction improperly highlighted the prosecution's theory of the case is incorrect. In fact, the instruction incorporated the defense theory—that appellant was responding to the *unreasonable* use of force when he struggled with Fernandez on the ground. Of course, at that time the robbery was already completed—appellant had already pushed his bicycle at Fernandez and started to try to punch him. However, had the jury concluded that appellant did not use any force until after Fernandez put him on the ground, then the instruction would have benefited appellant. In other words, the jury was free to conclude that appellant did nothing after he left the store and Fernandez attacked him and used unreasonable force in trying to detain him. The instruction did not imply that any particular conclusions should be drawn from specific items of evidence or impermissibly direct the jury to make only one inference or relate particular facts to a legal issue. Appellant's position reflects only that the facts favored the People, not that the instruction was improper.

*Ybarra*, at *5.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied. *See Ylst*, 501 U.S. at 803-04; *Barker*, 423 F.3d at 1091-92.

2.   Analysis

To obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. at 72 (1991). A jury instruction violates due process if it fails to give effect to the requirement that "the State must prove every element of the offense." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "'A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Middleton*, 541 U.S. at 437). Where an ambiguous or potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380.

Here, there is no reasonable likelihood that the jury applied the challenged instruction in a

14

way that violated the Constitution. The instruction did not lower the prosecution's burden of proof on the element of force for robbery; indeed, the instruction did not mention the defendant's use of force and only mentioned the merchant's use of force. As explained in Section A, above, the jury was properly instructed on the force element of robbery, i.e., that to find Mr. Ybarra guilty, the jury had to find that he "used force or fear to take the property or to prevent the person from resisting" and that, when he "used force or fear to take the property, he intended to deprive the owner of it permanently." CT 148 (CALCRIM 1600). The jury also received a standard instruction on the presumption of innocence and the prosecutor's burden of proof beyond a reasonable doubt. CT 146 (CALCRIM 220). The special instruction on the merchant's use of force did nothing to undermine the requirement that the jury find all the elements of robbery, did nothing to undermine the presumption of innocence, and did nothing to lower the prosecutor's burden of proof.

Mr. Ybarra argues that the instruction was favorable to the prosecution in that it referred to "the use of 'reasonable' force by the merchant where 'necessary' 'to protect himself' and 'to prevent escape,' while characterizing [Mr. Ybarra's] conduct as 'escape' and conduct calling for Fernandez to protect himself." Docket No. 1 at 18. This is not a fair reading of the instruction. The instruction did not tell the jury that the force used by Mr. Fernandez was necessary or was to protect himself or was to prevent an escape. Nor did the instruction tell the jury that Mr. Ybarra was engaged in an escape. The instruction was neutral as to who did what, and simply provided helpful information for the jury, which had heard testimony about the confrontation of Mr. Ybarra after he left the store, his initial reaction in the confrontation, and the wrestling that thereafter occurred. The instruction was material to whether defendant's force was part of the robbery or a reflexive response to unreasonable force by the merchant. Another instruction told the jury that it was the jury's duty to decide what the facts are, and that the jury should not assume that, just because the court gave an instruction, the court was suggesting anything about a fact. CT 122 (CALCRIM 200). The defense admitted at trial and here that the instruction is a correct statement of law. *See* RT 261; Docket No. 1 at 18 ("a legally correct instruction"). The instruction did not hinder the defense in its arguments that Mr. Ybarra used force in self-defense and not to effectuate

the robbery.

As the California Court of Appeal explained, the instruction actually provided legal support for the defense theory that Mr. Ybarra was permitted to use force against Mr. Fernandez's allegedly unreasonable force. That is just what the defense counsel argued. *See* RT 295 (arguing that the jury must consider whether the person is struggling with the intent to permanently deprive or "were they simply scared, simply trying to protect themselves."). If the jury had accepted that Mr. Ybarra had not used force to effectuate the theft of the can of beer, the jury would have acquitted him of the robbery count. The jury did not do so.

The lone federal case cited by Mr. Ybarra is inapposite. *Carella v. California,* 491 U.S. 263, held that jury instructions that imposed a mandatory presumption of embezzlement from retention of a rental car violated the Due Process Clause because they directly foreclosed independent jury consideration of the charges and relieved the State of its burden to prove every element of the crime beyond a reasonable doubt. The merchant's-use-of-force instruction contained no mandatory presumption, and therefore did not suffer the problem identified in *Carella*.

The California Court of Appeal reasonably could have concluded that there was no reasonable likelihood that the jury applied the merchant's-use-of-force instruction in a way that violated the U.S. Constitution. *See Estelle*, 502 U.S. at 72 & n.4. Mr. Ybarra is not entitled to the writ on this claim.

C.     Jury Instruction Regarding Flight

    1.     Background

The flight instruction given at trial stated: "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself." CT 143 (CALCRIM 372).

Mr. Ybarra contends that this jury instruction violated his right to due process in two ways. First, he contends that the instruction lightened the prosecutor's burden of proof because it was

1   argumentative in favor of the prosecutor and "presented appellant's use of force only as possible

2   flight from which his guilt could be inferred, rather than as force used in self-defense, as the

3   defense argued." Docket No. 1 at 22. Second, he contends that the instruction "presumed the

4   commission of a robbery and of [his] guilt of it in violation of his constitutional due process rights

5   to a presumption of innocence and proof beyond a reasonable doubt." Docket No. 1 at 24.

6       The California Court of Appeal rejected Mr. Ybarra's challenges to the flight instruction.

7   The appellate court rejected Mr. Ybarra's first argument because the California Supreme Court

8   had repeatedly rejected the argument that the flight instruction was argumentative and allowed

9   juries to draw improper inferences of guilt, and the California Court of Appeal was bound to

10  follow that precedent. *Ybarra*, at \*6 (citing *People v. McWhorter*, 47 Cal. 4th 318, 377 (Cal.

11  2009); *People v. Avila*, 46 Cal. 4th 680, 710 (Cal. 2009); *People v. Mendoza*, 24 Cal. 4th 130, 180-

12  81 (Cal. 2000)). The California Court of Appeal further determined that, even if it was error to

13  give the instruction under the circumstances of this case, "the giving of the instruction would be

14  harmless as the 'instruction did not assume that flight was established, leaving that factual

15  determination and its significance to the jury.'" *Id.* (quoting *People v. Visciotti*, 2 Cal. 4th 1, 61

16  (Cal. 1992). "If, as appellant contends in essence, there was insufficient evidence of flight—he

17  was actually defending himself—the instruction, by its own terms, had no application for the

18  jury." *Ybarra*, at \*6. When an instruction is inapplicable, it is "'usually harmless, having little or

19  no effect 'other than to add to the bulk of the charge.'" *Id.* (citations omitted).

20      The California Court of Appeal also rejected Mr. Ybarra's second argument, i.e., that the

21  flight instruction lowered the prosecution's burden of proof and invaded the jury's province by

22  presuming the existence of the crime in the first sentence of the instruction. That first sentence

23  stated: "If the defendant fled or tried to flee immediately *after the crime was committed*, that

24  conduct may show that he was *aware of his guilt*." According to Mr. Ybarra, by referring to "the

25  crime," the instruction implied that he had committed a crime and the reference to awareness of

26  guilt presumed the crime had occurred. Docket No. 1 at 24-25. The California Court of Appeal

27  rejected Mr. Ybarra's interpretations. The appellate court determined that the use of the word "If"

28  at the beginning of the sentence modified the whole phrase before the comma and made the entire

clause conditional. "The entire phrase must be construed together and modified by the word 'if' such that the jury has to determine both whether defendant had tried to flee and whether he had committed the crime charged." *Ybarra*, at *6. The appellate court also rejected Mr. Ybarra's argument that, by referring to awareness of guilt, the instruction presumed that his guilt existed. The appellate court explained that, with such a presumption, there would be "no point in giving an instruction allowing the jury to consider evidence of flight to show he was aware of his guilt because the crime would have already been established." *Id.* The court concluded that the flight instruction "contains no language a reasonable juror could construe as mandatory." *Id.*

> [T]he propriety of jury instructions is determined from "'the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' [Citation.]" (*People v. Jeffries* (2000) 83 Cal.App.4th 15, 22.) The first sentence of the instruction refers to an inference that flight "may show" that the defendant was "aware of his guilt." However, the instruction does not presume a defendant's guilt. Nor does it require the jury to find that a defendant in fact fled the scene or direct that a particular inference be drawn. Rather, the instruction is phrased in permissive and conditional, not mandatory, terms, such as "[i]f the defendant fled," "[i]f you conclude," and "it is up to you to decide...." (CALCRIM No. 372.) The instruction informed the jury that it could consider evidence of flight along with all the other evidence, and should give the evidence whatever meaning and weight it deemed appropriate. (*See People v. Carter, supra,* 36 Cal.4th at pp. 1182–1183.) Moreover, the instruction emphasized that evidence of flight was not alone sufficient to establish guilt: "The cautionary nature of the [flight] instruction[ ] benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory." (*People v. Jackson* (1996) 13 Cal.4th 1164, 1224.)
>
> Here, the trial court gave standard instructions on the presumption of innocence, direct and circumstantial evidence, the prosecution's burden of proof, and the standard of proof beyond a reasonable doubt, in addition to CALCRIM No. 200, which cautioned the jurors: "Pay careful attention to all of these instructions and consider them together.... [¶] ... Some of these instructions may not apply depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the fact." These instructions ensured that the flight instruction did not undermine the presumption of innocence or lower the prosecution's burden to prove each element of each offense beyond a reasonable doubt. [¶] In sum, we reject appellant's argument that CALCRIM No. 372 improperly presumed the commission of a robbery and his guilt.

*Ybarra*, at *7.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied. *See Ylst*, 501 U.S. at 803-04; *Barker*, 423 F.3d at 1091-92.

    2.   <u>Analysis</u>

As explained in Section B, above, to obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. at 72 (1991). A challenged instruction "'may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Middleton*, 541 U.S. at 437. Where an ambiguous or potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380. And, even if there is a constitutional violation, habeas relief is available only if the error had a substantial and injurious effect or influence in determining the jury's verdict.

Here, there is no reasonable likelihood that the jury applied the challenged instruction in a way that violated the Constitution. The Ninth Circuit has held that flight instructions, such as the one here, do not violate due process when those instructions do not declare that flight equals guilt and do not require the jury to draw an inference of guilt from flight. *See Hawkins v. Horal*, 572 F. App'x 480, 481 (9th Cir. 2014) ("As the district court recognized, the [flight] instruction protected Hawkins's due process rights because it 'meticulously limited how the jury could use such evidence' by instructing the jury that it was to determine whether flight occurred and how much weight to assign it, and that flight, if proved, may be considered in light of all other proved facts and was insufficient on its own to prove guilt."); *Karis v. Calderon*, 283 F.3d 1117, 1132 (9th Cir. 2002) ("flight instruction which clarified that flight alone is insufficient to establish guilt . . . did not direct the jury to ignore Karis' explanation for his flight" and did not violate due process); *Houston v. Roe*, 177 F.3d 901, 910 (9th Cir. 1999) (rejecting challenge to flight instruction because there was no clearly established federal law as determined by the Supreme Court "that prohibits giving a flight instruction when the defendant admits committing the act charged").

Other circuits have held the same. *See, e.g., Burton v. Renico*, 391 F.3d 764, 778 (6th Cir. 2004) ("Because the jury instruction directed jurors to make their own determinations as to whether Burton did in fact flee and if so, what state of mind such flight evinced, the trial judge's instruction regarding flight was not so prejudicial as to render the entire trial fundamentally unfair"); *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (where trial court had instructed jury that defendant "was presumed innocent and had to be proven guilty beyond a reasonable doubt" and "[n]othing in the flight instruction controverted those general instructions," the flight instruction did not violate due process).

Here, the flight instruction did not lower the prosecution's burden of proof. The instruction did not assume that flight had been established. The instruction protected Mr. Ybarra's right to due process in that it carefully limited how the jury could use any evidence of flight. Not only did the instruction provide that it was for the jury to determine whether the defendant actually had tried to flee or had fled the crime scene, the instruction also left it up to the jury to determine whether any such flight indicated guilt. The instruction also left it to the jury to decide how much weight to give to any such flight. The instruction also clearly stated that evidence of flight was insufficient on its own to prove his guilt. Moreover, as the California Court of Appeal correctly observed, the challenged instruction has to be viewed in the context of the overall jury charge. Here, the other instructions given to the jury included standard instructions on the presumption of innocence and the prosecutor's burden of proof beyond a reasonable doubt. CT 146 (CALCRIM 220). The court also instructed that it was the jury's duty to decide what the facts are, and that the jury should not assume that, just because the court gave an instruction, the court was suggesting anything about a fact. CT 122 (CALCRIM 200).

Contrary to Mr. Ybarra's suggestion, the instruction did not inform the jury that the only way to interpret Mr. Ybarra's use of force against the guard was as an attempt to flee. The prosecutor also never made that argument. Indeed, the prosecutor never mentioned the flight instruction at all. The prosecutor did argue that Mr. Ybarra used force to try to get away from Mr. Fernandez, but that was in the context of showing that the use of force "escalated the crime into a robbery," rather than as flight as consciousness of guilt. RT 279-80. The prosecutor did not urge

1   the jury to infer guilt from flight.

2        The California Court of Appeal's rejection of Mr. Ybarra's challenges to the jury

3   instruction on flight were not contrary to, or an unreasonable application of, clearly established

4   federal law as set forth by the U.S. Supreme Court.  He is not entitled to the writ on this claim.

5        Even assuming arguendo that the flight instruction violated Mr. Ybarra's right to due

6   process, the error would have been harmless.  The jury instruction on flight permitted, but did not

7   direct, the jury to make findings regarding flight.  The jury also was adequately instructed on the

8   elements of robbery, the presumption of innocence, and the prosecution's burden of proof beyond

9   a reasonable doubt.  The prosecutor never mentioned flight, let alone misstate the law on flight, in

10   his closing argument.  Lastly, the very brief jury deliberations -- the jury deliberated for just 65

11   minutes after a six-day trial, CT 118-19 -- suggest the jury did not struggle with this case and

12   weigh in favor of finding that any instructional error was harmless.  *See United States v. Lopez*,

13   500 F.3d at 846 ("'Longer jury deliberations weigh against a finding of harmless error because

14   lengthy deliberations suggest a difficult case.'").  If there was a constitutional error in the trial

15   court's giving of the flight instruction, the error did not have a "'substantial and injurious effect or

16   influence in determining the jury's verdict.'"  *Brecht*, 507 U.S. at 623.  Mr. Ybarra is not entitled

17   to the writ on this claim.

18   D.    <u>No Certificate Of Appealability</u>

19        A certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  This is not a case in

20   which "reasonable jurists would find the district court's assessment of the constitutional claims

21   debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a certificate of

22   appealability is **DENIED**.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

## VI.   CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED** on the merits. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: April 11, 2018

_____
EDWARD M. CHEN
United States District Judge